UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JASON SCOTT CROW, | ) |
| Claimant, | ) ) ) |
| vs. | ) ) Case No. 4:18-cv-0791-CLS |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Claimant, Jason Crow, commenced this action on May 23, 2018, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for supplemental security income benefits.[1]

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and, whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

---

[1] Claimant initially also appealed the denial of his claims for a period of disability and disability insurance benefits, but he effectively abandoned those claims by amending his alleged onset date to a date after his insured status expired. *See* Tr. 68.

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards because the ALJ improperly considered the medical opinions in the record. Upon review of the record, the court agrees that the ALJ improperly considered the opinion of claimant's treating physician and finds that the ALJ's decision should be reversed.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or

treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Elizabeth Lachman, claimant's treating psychiatrist, provided an assessment on May 27, 2015, that focused upon claimant's "ability to return to safe occupational functioning."[2] Her evaluation stated in part that:

> Mr. Jason Scott Crow suffers with serious mental illnesses as noted above. Mr. Jason Scott Crow further suffers with physical impairments, eg [*sic*], chronic and severe pain in his right leg which has been broken twice, sciatica, and other physical symptoms which are worsened by his worsening mental symptoms. . . . His symptoms have worsened progressively to the point where the patient is non functional in his personal, social as well as occupational functions.
>
> Mr. Jason Scott Crow is motivated to be productive in the community. The last time he was able to function safely in the work place for a meaningful length of time was in 2008. That was the year his father died and he quit his job. His mother died 2 years before that. These losses took a great toll on this young man's ability to maintain his already fragile stability in the workplace and he could no longer safely function in the occupational setting.
>
> Since then, Mr. Jason Scott Crow has tried his hand at various odd

---

[2] Tr. 376.

3

jobs, but was never was [*sic*] able to maintain any work for more than a couple [of] months or so at a time before his mental symptoms would overcome his ability to function in the work place. Mr. Jason Scott Crow lacks the concentration, persistence and pace to safely function in the workplace. He would stand off to the side as he was too anxious and depressed to continue working or doing what he should. None of his attempts have ever amounted to any productive work which leaves the patient with severe and worsening depressed mood, despairing, despondent, with feelings of anhedonia, guilt, helplessness, and hopelessness. Mr. Jason Scott Crow already suffered with intrusive thoughts, nightmares and flashbacks of prior traumatic events, including head injuries and motorcycle and motor vehicle accidents, in his life where he felt sure that he would die. The patient was able to maintain fragile functioning in the workplace until his strongest support system began to crumble with the loss of both his parents two years apart, with his father, a former patient of ours, committing suicide.

 Objective Rating Scales for Depression:

1.  Zung: Self-Rating (<34) 85-55
2.  Ruskin: (3nl: range 3-13) 9-12: Clinician rated: Measures severity: reported and observed: 5-point scale of three dimensions: verbal, displayed behavior, and secondary symptoms
3.  Hamilton: (HAM-D): This patient has been consistently in the range of 65 to 70.

 Mr. Jason Scott Crow is impaired because of his mental and emotional issues. These have led to clinically significant distress and impairment in personal, social, occupational and other important areas of function.

 Mr. Jason Scott Crow suffers from chronic, lifetime illnesses. As a result of his mental illness, this patient is predisposed to a high safety risk in any occupational setting. Mr. Jason Scott Crow's psychiatric symptoms led to a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning. Mr. Jason Scott Crow is unable to work an eight hour day or even a four hour day.

4

> He is unable to perform routine work. He is unable to work with colleagues appropriately and unable to take orders from supervisors. He is unable to follow even simple and certainly complex directions. He is unable to adapt to changes in the work routine or the work environment. He is unable to interact appropriately with the public.
>
> Mr. Jason Scott Crow is therefore unsafe and not able to function in the occupational setting. The patient's safety in the workplace cannot be guaranteed at this time, even with the help of vocational rehabilitation. At this time, this patient is not able to enter the workforce in any capacity. This current inability to work will have a duration of at least 12-24 months, if not permanent.

Tr. 376-77 (bracketed alterations and ellipsis supplied).

Dr. Lachman sent a referral letter to the Med-Assist Doctors Group on January 7, 2016, stating:

> Mr. Jason Scott Crow is a very nice gentleman, currently under my care and has been since 09 21 2006[ *i.e.,* more than nine years as of the date of Dr. Lachman's referral letter]. He is a 44 year old right handed SCM [*i.e.,* single Caucasian male] with a history of Major Depression, PTSD, chronic; Panic Disorder with Agoraphobia as well as complicated bereavement, who is treated with individual psychotherapy as well as psychopharmacology. This patient is known to be cooperative and compliant with his treatment regimen and follow up appointments.
>
> Mr. Jason Scott Crow also suffers with sciatica and lower back pain. These symptoms are worsened by worsening mood symptoms which are in turn worsened by worsening pain.
>
> I have been helping Mr. Crow with pain control until he could get in with a primary care physician. He has had lots of obstacles in that regard and continues to try.

Tr. 404 (bracketed alterations supplied).

5

Dr. Lachman provided another written statement on January 27, 2016. She reiterated her May 27, 2015 opinion, and also stated: "My professional opinion remains unchanged. Mr. Jason Scott Crow continues to lack the concentration, persistence and pace to safely function in the workplace."[3]

The vocational expert testified during the administrative hearing that an individual with the limitations assessed by Dr. Lachman would be unable to work.[4] Even so, the ALJ afforded only partial weight to Dr. Lachman's assessments of disabling limitations, stating:

> While Dr. Lachman's opinion is accorded some weight based on her treating relationship with the claimant, her conclusions are not wholly consistent with the observations of other treating sources or medical professionals. Although Dr. Lachman claims long-term treatment of the claimant, as mentioned above, none of her treatment notes is included in the record. Additionally, Dr. Lachman fails to address the claimant's long-term substance abuse and its co-morbidity effect, and refers to severe right leg [*sic*] and sciatica, complaints that are not mentioned in any other treatment record and are not alleged by the claimant . . . .

Tr. 57 (ellipsis supplied).

Claimant argues that the ALJ was wrong to reject Dr. Lachman's assessments based upon the absence of Dr. Lachman's treatment notes from the administrative record. During the administrative hearing, claimant's attorney explained that Dr. Lachman

---

[3] Tr. 425.
[4] Tr. 116-17.

6

is one of these psychiatrists who believes that you are not — that they will not release their regular office notes, but will only do record summaries. And that's why [Dr. Lachman's treatment notes] are not there. I have certainly tried to get them, but she is not going to release them. She will do the summaries and that's pretty much all I can tell you, Judge. *She is very thorough in her summaries to what she says and what his conditions are*. And there are — and she has, it's consistent with the report that she previously sent to MedAssist. *It's just that the actual notes, she's one of these psychiatrists that believes they're not allowed to be released*.

Tr. 77 (alteration and emphasis supplied). The ALJ commented that it was

> not the first time that I've had Dr. Lachman provide these type of summaries. Which — while they do have their intrinsic value, I'm not sure how much value they actually have when you don't have something to support it on to sort of get the feel for behind what led to this summary. And there you go. It is what it is and it — I know that even if you asked or I ask, I would get the same answer from Dr. Lachman, but I hope she understands that she's not doing her clients a favor. At least not in this forum. So there it is. I put it on the record, and whatever it's worth.

Tr. 77.

Claimant asserts that Dr. Lachman's practice of releasing only summaries of her treatment notes was justified by federal regulations supporting the Health Insurance Portability and Accountability Act of 1996 ("HIPPA."), 42 U.S.C. § 1320d *et seq*. Those regulations provide, in pertinent part:

> Except as otherwise provided in paragraph (a)(2) or (a)(3) of this section, an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set, for as long as the protected health information is maintained in the designated record set, *except for*:

7

>    (i) *Psychotherapy notes* . . . .

45 C.F.R. § 164.524(a)(1) (emphasis supplied). Additionally:

> The covered entity may provide the individual with a summary of the protected health information requested, in lieu of providing access to the protected health information or may provide an explanation of the protected health information to which access has been provided, if:
>
> (A) The individual agrees in advance to such a summary or explanation; and
>
> (B) The individual agrees in advance to the fees imposed, if any, by the covered entity for such summary or explanation.

45 C.F.R. § 164.524(c)(2)(iii).

Claimant should not be penalized for his psychiatrist's attempts to comply with HIPAA privacy laws. Even though the record does not contain all of Dr. Lachman's treatment notes, her summaries were very thorough and detailed — more so than many reports submitted by consultative physicians, whose reports are accepted by ALJ's, but who have only examined a claimant on one occasion. The ALJ should have taken the depth and thoroughness of Dr. Lachman's summaries into consideration before deciding to give them only "some" weight.[5] *See* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Moreover, even though the ALJ also relied upon his observation that Dr. Lachman's conclusions were not

---

[5] The court notes that "some" weight in this instance appears to equate to very little weight, as the ALJ did not adopt any of Dr. Lachman's more serious limitations.

consistent with other doctors' observations, that statement finds little support in the record. Treatment notes from emergency room physicians stated that claimant was fully oriented and in no acute distress when claimant visited the emergency room to treat acute conditions unrelated to his mental health, and notes from the doctors who treated him for back pain state that he was able to perform his daily living activities, but none of those assessments provide much information about claimant's ability to perform work on a continued basis, and they cannot serve as substantial support for the ALJ's rejection of Dr. Lachman's assessment.[6]

Because the ALJ's reasons for not providing full weight to Dr. Lachman's assessment were not supported by substantial evidence, the Commissioner's decision to deny claimant's supplemental security income benefits was in error and should be reversed. Moreover, because the vocational expert testified that an individual with the impairments assessed by Dr. Lachman would not be able to perform any substantial gainful activity, a remand for an award of benefits, and not for further consideration of the evidence, is warranted.

An appropriate order will be entered contemporaneously herewith.

---

[6] *See* Tr. 56, 325, 335, 344, 346, 354, 381, 383-84, 386-87, 390, 392-93, 395-95, 398-99, 403-04, 415).

DONE this 15th day of January, 2019.

_____
United States District Judge